Good morning, Your Honors. May it please the Court, Lenore Albert for the Appellant, Mr. and Mrs. Talaie. This is a homeowner case of a different variety for the first time coming to the Ninth Circuit with regard to what has been decisively split between the District Courts up to this time with regard to whether or not there is standing as to claiming an issue of securitization of a loan and whether or not some entity is wrongfully foreclosing. In this case, we have two defendants, U.S. Bank and Wells Fargo. And in this case, we had a deed of trust which was like a traditional deed of trust where it did not have MERS included and it only had Wells Fargo Bank. And in this case, in 2012, when Talaie had been desperately trying to modify his loan from 2010, the prior two years, he had received a denial notice finally two years later saying that they were going to sell his home because it was denied because an investor was not allowing modifications and that the loan had been transferred to a mortgage securitized trust back in 2006. Prior to the 2009 statute. Yes, prior to then the 2009 statute. This came to a complete surprise to Mr. Talaie because the only time he saw a transfer anywhere in the records was a 2012 assignment of deed of trust, which at that point in time said, without any backdating in the document itself, said Wells Fargo has now transferred this loan to U.S. Bank. And I'm going to avoid the mortgage-backed securitized trust names just because they're so long. So in this case... But what was transferred in 2012 was just the trustee title, correct? The beneficiary had not changed. The underlying owner had remained the same since 2006? Not according to when you look at the land records. Because the underlying owner, the lender and beneficiary, both in the deed of trust, was Wells Fargo Bank. In 2012 is the first time we see any type of assignment at all. And in that it says... I thought it was undisputed that U.S. Bank was the beneficiary beginning in 2006. No, that's always been disputed. It was not in the deed of trust. It was not alleged in the pleadings that U.S. Bank was 2006. There was alternative pleadings in the complaint. And that was with regard to fraud. Because depending on which route you take, we have a different representation. Either there's fraud in the representation that Talleys could modify their loan, and that Wells Fargo knew that they could, when in fact the truth was that U.S. Bank always held the loan in this mortgage-backed securitized trust, which did not modify loans. So that was one alternative representation. And in that case, you're right, Your Honor, we are assuming that this loan then was actually transferred in 2006 to U.S. Bank. Now in the alternative fraudulent representation, now we're looking at the other representation, and that is the investor denial, the end of the transaction. And that goes to Wells Fargo Bank, because Wells Fargo Bank failed to disclose the actual transfer to the trust. So either you're eligible or you're not eligible. And that would make Wells Fargo Bank liable on one end, and the eligibility would make U.S. Bank liable. Now, I want to make sure I understand. Can you review the betting for me here? Are we here talking about a violation of the Truth in Lending Act, the 1641G? That is to say, we're talking about the notification requirement that was triggered in 2009. Is that the underlying cause of action we're talking about? Yes, we have. So what evidence do you have that the beneficial ownership was not transferred until 2012? The evidence we have is the assignment of deed of trust, and that was included in the record. But that looked to me as though that was assignment of the deed of trust solely for purposes of changing the trustee. That assignment of deed of trust, the substitution of trustee document is what changes the trustee. It's labeled substitution of trustee, which is a different document, which was not provided to the court. But the assignment of deed of trust changes the beneficiary or the lender in this case. Normally, in all the other cases that come before the Ninth Circuit, there's always been MERS involved. And that's where the banks have always been able to assert, Well, because of MERS, the mortgage-backed securitized trusts don't require recording with MERS involved. Therefore, we didn't have to record these assignments of deeds of trust until later. Here, the substitution of trustee also brought in a second element. The substitution of trustee, which is at page 32 of Volume 2, it had Wells Fargo as the trustee on October 4, 2005. So maybe this will clear it up. And then when that occurred, what happened was then we saw the notice of default and the notice of sale come in. And that was actually saying that the trustee was Fidelity National Title. And is that the first time the plaintiffs learned that their mortgage had been sold to another investor? The first time they had learned that it was sold to another investor was in March of 2012, when they received their investor denial letter, which is on page 84 of the second volume. The recording of the assignment of deed of trust is not mailed to the homeowner. So that is discovered when you actually go look at the records. Counsel, Judge Gould, if I could interject a question and make sure it gets covered. So what's your best precedent to support your argument that 1641G should have retroactive application? My best precedent that it should have retroactive application? The actual... Well, before you answer that, doesn't it have to have retroactive application to support the claim you're making? I don't think so in this case, Your Honor. And the reason why I don't think it needs retroactive application in this case, because we don't have any evidence in the record other than the assignment of deed of trust as to what would be at the pleading stage a readily verifiable fact as to when that assignment occurred. The securitized trust agreements that were brought into this record do not ever show conclusively that Mr. Talley's loan was transferred to that trust. There's not one page that was cited by the respondents in this case showing Mr. Talley's loan being transferred. The only document we have that the court can judicially recognize at the pleading stage is the assignment of deed of trust, which was in 2012. Since 1641G was enacted in May of 2009 under the Barbara Boxer amendments, we don't need to worry about retroactive application in this case. And the record is clear on that point. The SEC agreement documents, you can see them in the second volume, page 116, 120, and 142. It only recognizes what would be transferred, but they just recognize trust. There's nothing in the deed of trust that actually labels this trust as being a beneficiary. There's no MERS in the deed of trust. There's not one recorded document in the Los Angeles County Recorder's Office that is ever filed or recorded until March of 2012, I mean February 22nd, 2012, that ever even mentions U.S. Bank or mortgage-backed securitized trust. And even if we were, which we shouldn't look at the facts contained in the document, we should only look at the document at the pleading stage, but even if we were looking at the facts, those facts contained in that assignment of deed of trust do not even attempt to backdate it. At the very least, but that would still be a question of fact and at least get us past the pleading stage, that that would be a question of fact on whether or not they in fact did transfer it and backdate the document. As we try to, I understand it's a very, very confusing field when we get all these different entities in the securitization process, but if we break it down and we look at the parties and look at what's really going on, what does it really mean? What it really means is you have independent investors investing and actually loaning the money to the borrowers. And what it really means is at the time that the money is loaned, that it's these individual investors that actually loan the money. There's nothing in the deed of trust in this case to show that we ever had individual investors because there's no MERS indicated in the deed of trust. I understand most of what you said. I just want to read you a paragraph from the district court's order, and I want you to tell me why you disagree with what the district judge wrote. I'm on page 5 of the 12-page order entered on March 29, the first of the two dismissals, except for record 14. I'll wait for you to find it. It's page 5 of 12 of doing the pagination of the order. Okay. So the March 29 order. Are you with me now? Yes, I'm with you, Your Honor. Okay. The first full paragraph, the district judge writes, the seller's warranties and servicing agreement, mortgage loan sale and assignment agreement, and trust agreement, collectively securitization contracts, established that plaintiff's loan was transferred to U.S. Bank in 2006 when the 2006-4 U.S. Bank Loan Trust was formed. Thus, the judicially noticed documents established that the transfer occurred in 2006. Why is that wrong? It is wrong because when you actually look at the documents that the court is referring to, it only talks about the mortgage-backed securitized trust coming into existence and that certain servicers were allowed to then service these loans, but it never identifies Mr. and Mrs. Talley's loan. It never gives a zip code. It doesn't give a principal payment amount. There's absolutely no indicia that Mr. and Mrs. Talley's loan was included in any of these documents. I should say I've not looked at those documents, although I may have to sooner or later, but do those documents list the loans individually? No, they do not. But what they do refer to is a mortgage loan schedule that lists the loans, and the defendants never provided the mortgage loan schedule to the court. So the piece of information that would verify to a court whether or not Mr. and Mrs. Talley's loan, which the defendants have in their possession, was never provided to the court one way or the other for the court to actually determine that fact. But even beyond that, we're at the pleading stage, and this is a request for judicial notice. And as the court has even said, it's hard to read through all of these documents, even though the court has part of a mortgage-backed securitized trust. We're talking about hundreds and hundreds of pages. Requests for judicial notice should be limited to the existence of the documents, but not what those facts are that are contained in them, because it's not readily able to determine it. It's not like a farmer's almanac, where you definitely know that it was 75 degrees and sunny out on October 1, 2011. We are talking about different types of facts here. And I would submit to this court that it was an error in the first place to try to take a request for judicial notice at the pleading stage and to reach so far into saying that the court could determine at the pleading stage what a sentence or a paragraph meant in a multi-hundred page document that is created by private parties and recorded with the SEC's office, where in fact not all of the documents, like the mortgage loan schedule, is not recorded, but yet refers to these private contracts in their agreements. Okay. You're down to about two minutes. Shall we hear from the other side and then give you a chance to respond? Thank you, Your Honor. Good morning, Your Honors. May it please the court. Paul Swindy on behalf of the appellees, Wells Fargo Bank and U.S. Bank as trustee. Let me begin by saying that the argument that you just heard about whether or not a transfer of the deed of trust took place in 2006 was not even an issue raised in the district court. It was presumed, because of the way the complaint was pled, that indeed the transfer had occurred. And indeed it did occur. And the documents that the court took judicial notice of were documents that were on file with the SEC, which were the operative documents, the transfer documents. And through that document, the plaintiff's loan was transferred. That transfer occurred in 2006. The statute, 1641G, was not passed until May of 2009. And consequently, the notice requirements there were not applicable with respect to the transfer of this loan. That statute is not retroactive. It's prospective. And so any argument that a transfer did not occur in 2006 or that notice was required is an erroneous argument. And indeed that's exactly what happened. Counsel, what's your best precedent on the point that 1641G is not retroactive? And is there a Ninth Circuit, do we have Ninth Circuit precedent on that? Well, we have the U.S. Supreme Court in one of its decisions. I believe it was Langsford v. ESI Film. And then there was a district court opinion, I believe it was the Southern District of California, in the Ng case. Both of those cases, certainly the Ng case, construing the Langsford case, concluded that this statute was not retroactive. OK. So. And on that, the Supreme Court case, at least as I understand it, is giving general standards on retroactivity. That is correct, Your Honor. OK. So what I'm asking is, have we as the Ninth Circuit ever written an opinion, given a precedential ruling, as to whether applying the Supreme Court standards, 1641G is retroactive? I do not believe that the Ninth Circuit has specifically ruled on that issue. But a district court, federal district court, here in California, in construing Langsford, has ruled that it's not retroactive. OK. That, of course, doesn't bind us, though we could follow it if it's persuasive. Are there any other circuit courts in the country that have ruled on whether 1641G is retroactive? Not that I am aware of at this time, Your Honor. OK, thank you. You're welcome. So, what happens is that the loan is transferred. In 2009, the borrowers were no longer able to make their payments on the loan. And so, consequently, the bank initiated its foreclosure proceedings with a notice of default. And there was an effort to modify the loan. Indeed, it was modified once, but the plaintiffs, excuse me, the borrowers, could not make their payments under that either. Didn't the borrowers, in fact, pursuant to request, didn't they make a $19,000 or $20,000 deficiency payment? Well, what they did was, yes, they did make $19,000 worth of payments. It was not sufficient to pay the arrearages. And consequently, what the bank did was sent the money back to the borrowers, which it is permitted to do pursuant to the terms of the deed of trust. And so, the loan modification process went forward. Unfortunately, because of the finances of the borrowers, it was ultimately determined that the modification could not be made. And therefore, the banks proceeded with the foreclosure. By the way, I should mention, and it's probably pretty important to mention this, and that is even after the loan was transferred in 2006, Wells Fargo still was the servicer of the loan. It was the servicer throughout, and it was the same party that the plaintiffs, excuse me, the borrower, obtained their loan from, the same party they were talking to throughout the loan modification discussions, and ultimately the one that informed them that their loan modification was not going to be happening because they did not qualify for that. And so, what you have here is you have a borrower who has been sitting in their home since 2009 and not having paid a nickel but for the $19,800, which was not sufficient to satisfy their arrearages. Was the foreclosure sale suspended in this case? Yes, by stipulation. It has not yet occurred. It has not yet occurred, that's correct. They're still in their house. So, for that reason, we believe the district court was correct in ruling that there was no violation of 1641G. We believe the district court was correct with respect to all of the state law claims, and those state law claims are ones that you find in virtually every case where a foreclosure is underway or a foreclosure has taken place. And essentially, claims have come to the court from the borrowers, and they've asked that the deed of trust be canceled. What basis? I don't know because there certainly hasn't been a tender of the indebtedness, and so there's no basis for canceling or acquiring title. Likewise, with respect to the claim that there was fraud here, all you have to do is take a look at the letter that they received. They indicate that there was a promise that they would get a modification. No such thing. All you have to do is read the letter, which says, you may be eligible. If, indeed, this happens, this is what will come. So there's no basis for making a claim that facts were misrepresented. All those were statements as to what could happen if a modification occurs, which it didn't. So the bottom line, Your Honors, is that the district court carefully considered all of these arguments and, I think, in very detailed fashion, addressed each one of them. And, indeed, in its second opinion of dismissal, in its first opinion of dismissal, it actually set forth how one has to plead these state law claims if one wants to be successful and gave the opportunity for the borrowers to do that. And they took a second chance at it and unsuccessfully pleaded a second time. So they've had their opportunity. The standard is abuse of discretion with respect to allowing another opportunity to plead the complaint, and we don't think there is any evidence that the court abused its discretion. Mr. Sweeney, we see a lot of these cases in Montana, but, of course, here we're dealing with California law. Is tender a prerequisite to all of the state law claims here? Virtually, yes. Yes, indeed. Specifically, California Civil Code Section 3412 says, a valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a deed of trust and obligation. So, absolutely, tender. Including for a fraud claim? Including for a fraud claim? Well, there has to be tender to cancel the document. If a person is claiming that documents are fraudulent, then presumably there would not be a requirement of tender. But here there's no basis for a fraud claim. And, indeed, in order to assert a fraud claim, they would have to rely upon oral agreements, and we know that the statute of frauds prohibits oral agreements when it comes to modifying a deed of trust. So, anyway, if you have any further questions, I'm available otherwise. No questions here. Thank you very much, Your Honors. Thank you. You've saved some time. Thank you. I'm going to try to really breeze through this really quick. Ms. Albert, before you do, you didn't argue at all about the dismissal of the state law claims. Do you agree with Mr. Sweeney that tender is prerequisite to most of those claims? No, I do not, Your Honor. On October 30, 2013, the California Court of Appeal in Luares v. Bank of America Home Loans made it very clear that tender is not required, especially when you have negligent misrepresentation, unfair competition law. We even have Ohlendorf in the federal court, which also says no tender is required. Tender is an exception and not the rule. So, no, with regard to our state law claims, tender is not required. If there was a quiet title with regard to a deed of trust where the deed of trust was not void or voidable, then it would be. But we've never asked for the deed of trust to be voided in this case. We only asked for the notice of sale to be voided in this case, which would put them back into the pre-foreclosure mode. Well, actually foreclosure mode because the notice of default would still be there. And in all of those cases, there's West, there's Jolly, we have a multitude of cases which were actually cited in the brief where tender is not required. And also, with regard to the statute of frauds, Luares v. BAC Home Loans also stated that you do not have a statute of frauds limitation in these types of cases. Because when they're representing about a status of a loan modification application, status of a notice of sale, like here we had you are eligible for a loan modification and, oh, no, now there's an investor denial error. I think you may be eligible, not you are eligible. Okay, may be eligible. And that is fine because in Luares, too, it was on a Fannie Mae document, so they didn't use the word shale like West did. In Luares, they also used Mae, but using the Fannie Mae guidelines. It came out, though, with a similar result where they did reverse and they allowed it to go forward on negligent misrepresentation because- Before your time runs too far, I'd like to ask you, your adversary represented that in the district court, it was really not disputed that the transfer of ownership to the U.S. Bank took place in 2006. What's your response to that? I say it was disputed. I did take my time. I reviewed our first amended complaint, and it is not in there. There is no admission in the first amended complaint that the transfer indefinitely took place in 2006. How about in the arguments to the court and all the papers and filings? At least as I understood the statement that I got from the other side is it was simply assumed that that was what had happened and that you did not dispute that. No, we've vigorously argued that the transfer occurred in 2012. But as your honors also pointed out, there has never been a decision with regard to retroactivity. I think there's about to be one. So for purposes of my question, assume that there is no retroactivity. Okay, assuming that there is no retroactivity, we argued vigorously for the position that this assignment did not occur until 2012, and we gave the court proof as to why our position was plausible. Again, remember, we're at the pleading stage. No, I understand. That's why I'm asking this question. Right. But even if it weren't with regard to retroactivity, I think that's a strong word. However, the whole purpose of this code section was to help people that were already in foreclosure or going to be facing foreclosure during the foreclosure crisis. It was not meant for deed of trust, for new loans. It was meant for people. Barbara Boxer said, I quote, this is another tool. That's what she said on the legislative floor, and that's what they voted on. Another tool to help homeowners. Counsel, do you want to revisit your answer to my earlier question to you, where I asked you what was your best precedent to support your argument that 1641G is retroactive? I think your answer kind of dodged that, frankly, and argued, well, we don't have to consider that because of your theory on when a transfer took place. But assuming we don't agree with you, and assuming we, on the timing of transfer, and assuming we think it happened 2006, then what would be your best argument and precedent in support of it that you'd like us to look at to say 1641G is retroactive? My best precedent would actually be looking at the statute and the discussion on the legislative floor. Go ahead and look at when they actually enacted it in May of 2009. Most of the cases we did submit those, but maybe we did not. And I would also, if the court really wanted us to further brief with the legislative analysis behind it, I think that's the best precedent because we don't have anything else that would bind this court at this time. It's a relatively new statute. When you're talking about the policy, why did Congress enact this bill? And that is our best statute. That is the best precedent you can have. If they enacted it to save homeowners, well, Congress knew that these deeds of trust already existed. They already knew. And as a supplemental briefing, unless we order supplemental briefing, we don't need it. But if we do think we need it, we will make sure the party is aware of that. And I also want to argue the UCL, the unfair competition law, with the 1641G, obviously it would be unlawful. That's not prohibited. I want the court to look at what seems to evade courts when we're talking about homeowners. They like to say, well, it was the homeowner's default, or the homeowner didn't reasonably rely, or why would the homeowner think this? In this case, we have some clear-cut evidence. We have the oral agreement, prior oral agreement to modify, which did lower their interest rate by X points, and it was all oral. There was nothing written. You're four minutes over, so if you'd like to sum up. So in summation, we do have damages here. Anytime you have a bank that holds something over on your property, you can't use that property to collateralize anything else or to have credit. You have credit damage. There are many other things here. You do not need tender. The statute was required to help homeowners now, not homeowners 20 years from now. Okay. Thank you, Your Honor. Thank you. Thank you. If I'm pronouncing it right, Talahi v. Wells Fargo and U.S. Bank submitted for decision. We will now have a five-minute recess, and maybe we will come back for our final case.
judges: Christensen, Fletcher, Gould